No. 22,415.

W. A. RITCHIE, MYRTLE BUSSERT, and JENNIE BURNS, *Appellants*, v. EDWARD RAWLINGS and POLLY ANN RAWLINGS, *Appellees*.

### SYLLABUS BY THE COURT.

1. PLEADINGS—*Verification of Answer—Execution of Written Instrument Put in Issue.* The question of the execution of a written instrument held to have been in issue, notwithstanding the form of the verification of the denial thereof.

2. CONTRACT—*Division of Property—Proposition Not Accepted During Lifetime of Party—No Completed Contract.* A letter, including an agreement for the division of property left by a decedent was signed by all the heirs excepting one, to whom it was mailed for his consideration and action. He did not reply nor make any communication regarding it, but in the course of something over a week came to the place of residence of the signers, bringing it with him, arriving after the death of one of them. He then assumed the position that the letter, to which his signature was affixed, had become a binding contract. *Held*, that the position was untenable, because for that situation to have arisen his acceptance must have been determined upon and communicated during the life of all the parties.

3. SAME—*Evidence.* The evidence held not to preclude the parties interested from denying the existence of such a contract.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed January 10, 1920. Affirmed.

*Sullivan Lomax*, of Cherryvale, for the appellants.

*J. A. Brady*, of Cherryvale, for the appellees.

The opinion of the court was delivered by

MASON, J.: Mary A. Rawlings died November 1, 1917. She left a will undertaking to give to her husband, Williard H. Rawlings, a life interest in their homestead in Cherryvale, and providing for the division of the rest of her property, which included a quarter section of farm land, among her three children by a prior marriage—a son and two daughters—who were her only other heirs. It is not shown that the husband ever elected to take or not to take under the will, and it has never been probated. On November 9, 1917, the husband and the two daughters of the deceased signed a letter

which was mailed to the son, W. A. Ritchie, who was then in Seattle, and which embodied an agreement that the husband should be given full title to the homestead, the other property to be disposed of in the manner indicated in the will; pro‧ vision was made for this arrangement to be given effect by the husband's quitclaiming the farm to the children and their deeding the homestead to him, he to sell the personal property and divide the proceeds after the payment of debts. Ritchie received the letter, but wrote no reply. Williard H. Rawlings died intestate November 28, 1917, his heirs being his parents, Edward Rawlings and Polly Ann Rawlings, who lived in In-. diana. A letter was written to them in behalf of Mrs. Rawlings' children, in effect asking them to abide by the terms of the agreement which had been incorporated in the letter to Ritchie, but they refused to do so, saying: "What we don't do in life goes undone," apparently meaning that as the proposal had not been agreed to by Ritchie while Williard H. Rawlings was alive, no contract had resulted. Ritchie and his sisters then brought an action against Edward Rawlings and his wife to declare the plaintffs to have full title to the farm, pleading the letter to Ritchie, with his signature attached, as a completed contract. The plaintiffs were denied relief, and appeal.

1. The plaintiffs contend that the execution of the contract for the division of the property must be regarded as admitted because the denial thereof was not properly verified, under the rule stated in *Kimble v. Bunny,* 61 Kan. 665, 60 Pac. 746, and *Smith v. Bowersock,* 95 Kan. 96, 147 Pac. 1118. There the verifier merely swore that the facts stated in the general denial were true, and this was held insufficient. Here an affidavit of the defendant's attorney was attached to the answer, stating that he believed its allegations to be true. If the pleading had contained only a general denial, this verification might perhaps have been insufficient, under the cases cited, to put in issue the signing of the letter by Ritchie as an effective execution of the contract it contained. But it also included a specific averment that the document had not been signed by all of the parties during the life of Williard Rawlings, and this statement, being sworn to, operated as an effective specific denial. Moreover, in the two cases referred to, the effect of holding the verification invalid was to affirm the judgment of

the trial court. If necessary to sustain the present judgment it should be held that the case was tried as though the question of fact as to the execution of the contract had been properly raised, and that the form of the verification was not now open to challenge, not having been called to the attention of the trial court. (*Emery v. Bennett,* 97 Kan. 490, 155 Pac. 1075.)

The plaintiffs assert that the form of the specific denial referred to is that of the "negative pregnant." It is true that the denial that the letter had been signed by all the parties during the life of Williard Rawlings is (in the idiom of the common-law pleader) pregnant with an admission that some of them had signed it before his death, and that all of them had finally signed it. But that is precisely what the defendants assert—that all but Ritchie signed the letter while Williard Rawlings was still alive, and that Ritchie added his signature, but not until after the death of Williard Rawlings.

2. The letter sent to Ritchie was a proposal, and required an acceptance before it could become a contract. The proposal was for an agreement in the nature of a voluntary partition. It contemplated a division of real and personal property among those entitled thereto, in a different proportion from that to which they were entitled as a matter of legal right. Until a contract of that character became binding upon all the parties, it would bind none of them. (92 Am. Dec. 127; 30 Cyc. 165.) Save in certain exceptional classes of cases to which that now under consideration does not belong, the acceptance of a proposal in order to have any effect must be communicated to the proposer, "or put in the proper way to be communicated" (*Mactier v. Frith,* 6 Wendell, 103) to him by an act, such as a deposit in the mails, which puts it for practical purposes beyond the control of the acceptor. (13 C. J. 284, 300; 6 R. C. L. 606, 607.) And if either party dies before such actual or constructive communication, the offer lapses and no contract results. (13 C. J. 298.)

When the letter here involved was produced in court it bore the signature of Ritchie, but no evidence was given as to when it was placed there. He himself did not testify. So far as the evidence shows, he may have signed the letter after he learned of the death of Williard Rawlings, which was after he arrived

at Cherryvale, and on the day of the funeral. The particular time at which he wrote his name on the paper can be of little consequence, however, for so long as he kept the document in his own possession and informed no one of his act, the practical situation was the same as though he had not even made up his mind whether to sign or not, since it rested wholly with him to give effect to the signature or to withhold it. (6 R. C. L. 611, note 15.)

Evidence was given that he had told one witness that "he got a letter from the folks about his mother's estate and he came back to settle it up"; that "he never said anything to witness about any agreement." Another witness, the husband of one of the plaintiffs, testified that Ritchie told him that "he had come back to settle the matter up"; that "he could talk back and forth and get through quicker than by writing, send deeds back and forth." If Ritchie had made up his mind on the receipt of the letter to acquiesce in its terms, and make it immediately effective as a contract, that result could have been accomplished with no delay whatever by his signing it and giving notice that he had done so, by remailing it or otherwise. If he was satisfied to accept the proposed settlement of the property rights of the parties concerned, he could not by returning to Kansas shorten the period within which it could be made binding upon them. His personal presence here could save time in reaching a binding contract for the division of the property only in case some of the terms remained to be discussed and agreed upon—and that would seem to be the only contingency in which there would be occasion to "talk back and forth." If necessary to support the judgment, the trial court may be deemed to have made a finding to this effect, for the evidence and the permissible inferences therefrom would have justified it: Ritchie refrained from accepting the proposed adjustment because he hoped to be able to persuade Williard Rawlings to abide by the provisions of his wife's will, and accept a life estate in the homestead in full of his claims; he came to Kansas to attempt to accomplish this result by personal solicitation; finding on his arrival that the death of Williard Rawlings had made this impossible, and preferring the division indicated in the letter to that which the law would make, he attached his signature to the letter and assumed the

position that it had become a binding contract. Such a finding would of course be fatal to the contention of the plaintiffs that the defendants have now no interest in the farm, because it would compel the conclusion that the proposal contained in the letter had not been effectively accepted, and therefore no binding contract had resulted. If Ritchie upon receipt of the letter had (as it is now claimed in his behalf that he did) decided in his own mind to accede to its terms, and started at once for Kansas with this in view, but on learning of the death of Williard Rawlings had concluded that he would prefer the property should be divided in accordance with the law of descents and distributions, it is obvious that he would have been perfectly free to act in harmony with his new state of mind, and that no legal right of the defendants would have been invaded thereby.

3. The record seems to disclose a contention that the conduct of Williard Rawlings after the letter had been written precluded him and his privies from denying its binding force. Evidence was given that on November 7 he sold off a quantity of personal property, consisting of live stock, grain, and farm machinery—not "household effects or anything of that kind." But it did not appear that anything was sold that belonged to his wife's estate. He was shown to have told the tenant of the farm that his wife's children "were trying to come to some sort of agreement for him to have the home place and the children to have the farm"; that "they had come to an agreement, but that there was one heir out west and they had sent the papers out for him to sign." This talk was before the date of the letter to Ritchie, and appears to have been in accordance with the facts; it does not necessarily imply that a contract had been effected—it seems to point rather to the contrary. No special findings were made, and, in the absence of conclusive evidence to the contrary, the facts must be regarded as settled in favor of the defendants. We discover nothing in the proved facts to disable them from claiming a half interest in the property left by their son's wife.

The judgment is affirmed.