GEORGE R. CAZALLIS, et ali., In Equity

*vs.*

FRANK H. INGRAHAM, Admr., et ali.

Knox.   Opinion June 10, 1920.

*The mere fact of the entry of a deposit of money in a bank, by one person in trust for another, would not effectuate an indisputable gift in the form of an irrevocable trust without limitation or condition, which the beneficiary might terminate at will, and which extrinsic evidence could not control.  But such deposit would raise a presumption that an irrevocable trust was intended, and, if supported by evidence showing a continuing intent, or not refuted by the showing of a contrary intent, create a completed and irrevocable trust, unless the donor reserved the power of revocation.*

On January 13th, 1880, one Celina Cazallis, whose domicile was in the State of Maine, deposited one hundred dollars from her personal funds in a Boston Savings Bank, in her own name as trustee for a sister of hers, and received a pass-book evidential the deposit.  During the same year she increased the amount of the deposit by one hundred dollars more, and still later swelled it by seven hundred dollars.  As interest accrued and remained available it was credited to the account.  At odd times, beginning about ten years from the first deposit, and thence continuing for a period of twenty years, the depositor

made withdrawals to the number of thirty, but for what purpose does not expressly appear. Thirty-two years after the first deposit, a guardian was appointed for Miss Cazallis. He found the pass-book among her effects, retained it throughout his trust, and afterward delivered it to the domiciliary administrator of the intestate estate of the depositor, the account being outstanding and open. By agreement between the administrator and the parties in interest, the money was withdrawn from the bank, and remained in the administrator's custody, pending determination of ownership. No one, excepting the bank officials, the depositor herself, and, later, her guardian appears to have known of the depositor's dealings with the bank until after her death in 1916.

At a later date, in the year of 1880, Miss Cazallis likewise opened three accounts in another Boston bank. As the pass-books show, one was in her name with the addition of trustee for her niece, Eliza H. Robinson; the others, respectively, as trustee for two of her nephews. These accounts were increased by subsequent deposits and by interest accummulations. There were no withdrawals. The pass-books came to the administrator from the former guardian. All the donees survived the depositor, and are claimants of the funds. None had knowledge, while Miss Cazallis was alive, of a deposit purporting to have been made by her for his benefit.

It is contended by the defense that of the four transactions not one was effectual to make over the possession or control of the particular money.

Evidence to establish a trust must be explicit and convincing. The giving must be consummated. It must not remain unexecuted. It must rise above a promise wanting consideration and unredeemed. If the act be left executory or promissory, courts will not know it as a gift. A gift, inter vivos or equitable, is voluntarily bestowed without expectation of return or of recompense. An express trust rests upon a declaration. No especial phrase or formula is requisite to create a trust. It is enough to make one himself a trustee for the benefit of another if it be explicitly, unconditionally and fully stated or declared in writing or orally, if the property be personal, that it is held in trust for the person named. Acceptance by the donee, always essential to perfect a trust, may be after the donor's death, and is presumed in case of a beneficial trust.

The mere fact of the entry of a deposit of money in a bank, by one person in trust for another, would not effectuate an undisputable gift in the form of an irrevocable trust without limitation or condition, which the beneficiary might terminate at will and which extrinsic evidence could not control. But such deposit raises a presumption that an irrevocable trust was intended, and, when supported by evidence showing a continuing intent, or when not refuted by the showing of a contrary intent, creates a trust which is completed and irrevocable, unless the donor reserved the power of revocation. That Celina Cazallis was entitled to deposit her own moneys in trusts, and to constitute herself trustee thereof, is unquestionable. Explicitly and unreservedly, as the headings of the bankbooks at first view indicate, Miss Cazallis intended all to know that the funds were deposited in her name as trustee for others. In doing this, unfettered and untrammelled English presumably was used for what is meant. No evidence

having been brought forward irreconcilable with such signified intention, it seems consonant with reason and rules of law to take for granted that the words expressed her deliberate intent as trustor, and that they should be given their full effect. It is unnecessary now to inquire whether the rights of Celina Cazallis as trustee, fell by succession upon her guardian. Upon the death of Miss Cazallis they devolved upon her administrator. The trusts did not survive her. Now that she is dead, the administrator of her estate, who has but naked legal title to the trust funds, should make payment to the beneficiaries to each his due proportion.

On report, on agreed statement. A bill in equity to determine to whom money deposited in four banks in Boston, Massachusetts, by Celina Cazallis, during her lifetime, in her name as trustee for four cestuis que trustent, one of whom was a sister, two of whom nephews, and one a niece, should be paid. The funds since the depositor's death, by agreement of the parties in interest, were paid over to the domiciliary administrator of the estate of the depositor, pending the termination of this suit. The case was reported to the Law Court upon the bill, answers, copies of bank deposits, and agreed statement of facts, for the determination of the legal rights of the parties and all questions of law arising therefrom; and to render final judgment in accordance therewith. Bill to be sustained by single Justice. Decree in accordance with the opinion.

Case stated in the opinion.

*Frank B. Miller, and M. A. Johnson,* for plaintiffs.

*S. T. Kimball, Daniel V. McIssac, and Frank H. Ingraham,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, WILSON, DEASY, JJ.

DUNN, J. From her earnings as saleswoman in a Boston store, Celina Cazallis, whose domicile was in the State of Maine, on January 13th, 1880, deposited one hundred dollars in the Suffolk Savings Bank of that city, in her own name as "Tr. for Nancy L. Robinson," Nancy being a sister of hers. A pass-book evidential the deposit was given the depositor by the bank. In December of the same year, Miss Cazallis increased the amount of the deposit by one hundred dollars more, and nearly five years later she swelled it by seven

hundred dollars. As interest accrued and remained available it was
credited to the account. At odd times, beginning about ten years
from the first deposit and thence continuing for a period of twenty
years, the depositor made withdrawals to the number of thirty, but
for what purpose does not expressly appear. Notwithstanding these
withdrawals, the integrity of the original deposits never was impaired,
and the credit balance of the account grew, by way of accumulations
of interest, from $900.00 to $1,744.02. Thirty-two years after the
first deposit, a guardian was appointed for Miss Cazallis. Finding the
pass-book among her effects, the guardian retained it in his possession
throughout his trust; afterward delivering it to the domiciliary
administrator of the intestate estate of the depositor, the account
being outstanding and open. By agreement between the adminis-
trator and the parties in interest, the money was withdrawn from the
bank, and remains in his custody, pending determination of owner-
ship in this bill to that end. No one, excepting the bank officials, Miss
Cazallis herself, and, later, her guardian, appears to have known of
the dealings with the bank, until after the depositor's death in 1916.

On October 13th, 1880, Miss Cazallis opened three accounts in the
Provident Institution for Savings, another Boston bank. As the
pass-books show, the accounts were in her name with the respective
additions of "Trustee for Hiram Cazallis," "Trustee for George R.
Cazallis," and "Trustee for Eliza H. Robinson," who now is
Mrs. Bowen. Hiram and George Cazallis were nephews of Celina.
Counsel have referred to Mrs. Bowen as Celina's niece. These
accounts were opened with personal funds of the depositor. In every
instance the initial deposit was $50.00. One day, ten years later,
Miss Cazallis added fifty dollars to each. About three years after-
ward, she put eighty dollars in the Eliza H. Robinson account.
From these accounts there was no withdrawal. When, to await the
outcome of this suit, the moneys of the several accounts were received
by the administrator, those in favor of Hiram and of George each
amounted to $238.26; that of Eliza H. Robinson to $380.73. In
relation, pass-books had issued to the depositor and were retained in
possession, at first by her and more recently by her guardian, until
the latter handed them over to the administrator, with the Nancy
Robinson book. The donees all survived the depositor and are
claimants of the funds. None had knowledge, while Miss Cazallis
was alive, of a deposit purporting to have been made by her for his

benefit. It is contended by the defense that of the four transactions not one was effectual to make over the possession or control of the particular money.

Decisions of this court hold the equitable principle to be well established, that, excepting as to creditors of the donor whose rights could be affected by it, or bona fide purchasers from him for value, without notice, an executed voluntary gift of property in trust will be regarded as valid and enforceable. The gift is an equitable one as distinguished from a legal gift inter vivos. While differing from a legal gift, an equitable gift yet involves essentially similar acts for establishment. A gift inter vivos, to be effective, requires a delivery of the property itself, and must at once completely pass title so that over it the donor can have no further dominion. A gift in trust withholds the legal title from the donee. But the equitable title passes. The donor, whether he transfer the legal title to a third person, or retain it in himself, has parted irrevocably with the beneficial title (*Bath Savings Inst.* v. *Hathorn,* 88 Maine, 122; *Norway Savings Bank* v. *Merriam,* 88 Maine, 146), and, without the consent or the renunciation of the beneficiary, he is left incapable to extinguish the trust. *Savings Inst.* v. *Hathorn,* supra. Thereafter, on the part of the donor, neither a change of mind, commendable desire to benefit some other person, affection waned or waning, regret's sting nor sorrow's pang, the ills of life, the vicissitudes of fortune, inability to care for himself, nor any other reason so far as he alone is concerned, should be permitted to undo what was validly done. There may be reservations on his part, such as income (*Savings Inst.* v. *Titcomb,* 96 Maine, 62), or he may fix a time for the vesting of the legal title in the beneficiary (*Insurance Company* v. *Collamore,* 100 Maine, 578), but the gift of the equitable title is as perfect and irrevocable as is the gift of the thing itself in an executed gift inter vivos. *Savings Inst.* v. *Hathorn,* supra; *Savings Bank* v. *Merriam,* supra; *Insurance Company* v. *Collamore,* supra.

Evidence to establish a trust must be explicit and convincing. The giving must be consummated. It must not remain unexecuted. It must rise above a promise wanting consideration and unredeemed. If the act be left executory or promissory, courts will not know it as a gift. A gift, inter vivos or equitable, is voluntarily bestowed without expectation of return or of recompense.

An express trust rests upon a declaration.  *Savings Inst.* v. *Hathorn,* supra.  The declaration bears the same relationship to an equitable gift that delivery bears to a legal gift.  No especial phrase or formula is requisite to create a trust.  It is enough, as made known by the Massachusetts court, to make one himself a trustee for the benefit of another, if it be explicitly, unconditionally, and fully stated or declared in writing or orally, if the property be personal, that it is held in trust for the person named.  *Gerrish* v. *Inst. for Savings,* 128 Mass., 159; *Insurance Company* v. *Collamore,* supra; *Savings Bank* v. *Merriam,* supra; *Savings Inst.* v. *Fogg,* 101 Maine, 188; *Gower* v. *Keene,* 113 Maine, 249.  To perfect a trust it must be accepted.  But the acceptance may be after the donor's death.  *Woodbury et al.* v. *Bowman,* 14 Maine, 154, 161.  Acceptance is presumed in case of a beneficial trust.  *Libby* v. *Frost, et als.,* 98 Maine, 288.  So this case starts readily along a right of way well defined by precedents.

Notice to the beneficiary of the establishment of a trust is unnecessary.  *Savings Inst.* v. *Hathorn,* supra; *Savings Bank* v. *Albee,* 64 Vt., 571; *Smith* v. *Darby,* 39 Md., 278; *Merigan* v. *McGonigle,* 205 Pa. St., 321; *Martin* v. *Funk,* 75 N. Y., 134.  A trust of this kind originates with the donor's act and accompanying appropriate declaration. *Milholland* v. *Whalen,* 89 Md., 212, 44 L. R. A., 205.  The material inquiries are the intention which went with that act, and unequivocal avowal of holding the property in trust for another.  *Bickford* v. *Mattocks,* 95 Maine, 547.  If a trust be created, no later act of the donor, whether impulsed by good or by bad, can destroy it.  By the intervention of a trustee, even a *donatio mortis causa* may be effected (*Borneman* v. *Sidlinger,* 15 Maine, 429; *Dole, Admr.* v. *Lincoln,* 31 Maine, 422; *Dresser* v. *Dresser,* 46 Maine, 48; *Clough* v. *Clough,* 117 Mass., 83; *Sheedy* v. *Roach,* 124 Mass., 472), although the gift does not come to the knowledge of the donee and is not accepted by him until after the death of the donor.  *Pierce* v. *Bank,* 129 Mass., 425.

*Savings Institution* v. *Hathorn,* supra, concerned a savings bank trust.  In that case, the method employed to create the trust was similar to that used here; the nature of the evidence proving the trust was different.  Besides a pass-book of distinctive features characteristic of those here, there was clear and emphatic evidence that when the deposit was made and afterward, it was the orally expressed intention of the depositor that, at his death, the money should go to the beneficiary.  On interpleader by the bank, to settle

title to the fund, the trust prevailed. It was held, that from the making of the deposit the donee was clothed with the beneficial title to the money, though the legal title did not vest in her until the death of the donor.

The mere fact of the entry of a deposit in a bank by one person in trust for another would not effectuate an indisputable gift in the form of an irrevocable trust without limitation or condition, which the beneficiary might terminate at will, and which extrinsic evidence could not control. *Savings Inst.* v. *Hathorn,* supra. The entry on the books is not conclusive. *Bank* v. *Fogg,* 83 Maine, 374. Evidence from another source is admissible to vary the effect of the entry and show the intention of the depositor. *Northrop* v. *Hale,* 72 Maine, 275; *Gower* v. *Keene,* supra. But the deposit of money in a bank by one person in trust for another raises a presumption that a trust was intended, and, when supported by evidence showing a continuing intent, or when not refuted by the showing of a contrary intent, creates a trust which is completed and irrevocable, unless the donor reserved the power of revocation. *Barker* v. *Frye,* 75 Maine, 29; *Savings Inst.* v. *Hathorn,* supra; *Norway Savings Bank* v. *Merriam,* supra; 39 Cyc., 68; *Merigan* v. *McGonigle,* supra. Granting natural import to the words, the entries on the books given Miss Cazallis declared a perfected voluntary trust. But this may be disproved. *Barker* v. *Frye,* supra; *Savings Inst.* v. *Hathorn,* supra; *Northrop* v. *Hale,* 72 Maine, 275; *Northrop* v. *Hale,* 73 Maine, 66; *Gower* v. *Keene,* supra.

That Celina Cazallis was of right entitled to deposit her own moneys in trusts and to constitute herself trustee thereof is unquestionable. *Savings Inst.* v. *Hathorn,* supra; Perry on Trusts, Secs. 96-98; *Gerrish* v. *Inst. for Savings,* supra; *McMahon* v. *Lawler,* 190 Mass., 343. The evidence mainly relied on in this case is the pass-books. The entries thereon imply an actual present gift. In the connection in which it was used on the Nancy Robinson pass-book, "Tr." was an abbreviation of, and stood for, trustee. Logically created, the prima facie case, if it shall be destroyed, must be brought to nought logically. Retention by Miss Cazallis of the pass-books was consistent and not inconsistent conduct on the part of a trustee. The books disclosed the existence and whereabouts of trust funds, and were vouchers of contract rights against the banks. They were received by her as trustee, and as such she properly kept them. *Ray* v. *Simmons,* 11

R. I., 266. She needed the books in order to perform her duties as trustee. To borrow and use the language of *Merigan* v. *McGonigle*, supra: "It was necessary for the depositor to retain the pass-book that the various sums might from time to time be entered in it." "When a deposit in a bank is made in the name of the depositor in trust for another the possession by the depositor of the bank-book is a possession by the trustee, and does not detract from the force of the entry, or indicate that no interest had been given to the cestui que trust." *Baker* v. *Baker*, (Md.), 90 Atl., 776. That the guardian retained the books in his custody is not prejudicial to the plaintiffs' cause. It is unnecessary now to inquire whether the rights of Celina Cazallis, as trustee, fell by succession upon her guardian. Upon the death of Miss Cazallis they devolved upon her administrator. *Boone* v. *Savings Bank*, 84 N. Y., 83. The administrator took the several funds as trustee, not as assets, and holds them with all the rights, and subject to all the duties of the deceased trustee. *Boone* v. *Bank*, supra. Depositing other moneys in the accounts was not incongruous. Miss Cazallis was as privileged to make the later deposits as the first. "And each deposit entered in that book was not only a declaration of a trust as to the sum thus deposited, but a recognition of the trust created by former deposits." *Merigan* v. *McGonigle*, supra. Nor, unmet by countervailing proof, were the withdrawals by her, of earned interest, aggregating little more than $670.00 in twenty years, from the Nancy Robinson account, incompatible acts. What application was made of this money does not appear. To establish the existence of a trust, the burden of proof lies on the party who alleges it; but, the trust once established, the burden is shifted upon the other party to show extinguishment. *Prevost* v. *Gratz*, 6 Wheat., 481, 5 Law. Ed., 311. Each pass-book bespeaks itself prima facie evidence of an executed trust, and points out the trustee. "The deposit was sufficient in itself as a declaration of trust to vest the beneficial interest in the cestui que trust, if that was the intention of the depositor." *Milholland* v. *Whalen*, supra. A showing that Celina made a deposit in the bank on the trust that she was to hold the title and the power to dispose of the property so long as she lived, and then what was left was to go to the cestui, would disclose an executory trust, and not an executed one. *Smith* v. *Bank*, 64 N. H., 228. But such mode of making a gift would be testamentary in character, and, parting company with the statute of wills, would be without effectiveness.

The donor also was trustee. Courts presume that where two characters are united in one person, and that person performs an act, he performs it in that capacity which would give the act legal efficacy. *Yeaton* v. *Lynn*, 5 Pet., 224, 229; 8 Law Ed., 105, 107. Fiduciaries are presumed to have acted in good faith and rightly performed their duties. True, this assumption is an administrative one and has no probative value. In this respect it differs from a presumption of law carrying an inference of fact. All of which is another way of saying that, without being obliged to overcome any adverse indicative circumstance arising from an administrative assumption, he who sets up the existence of a situation different from that presumed, takes upon himself the burden to prove it to be so. *Chamberlayne* on on Evidence, Secs. 1219-1220. In A. & E. Ann. Cases, Vol. 1, page 904, it is stated in a note that a deposit of money made in a bank by one person for another creates a presumption that an irrevocable trust was intended, and unexplained is conclusive as establishing such trust as of the time when the deposit was made, thus invalidating any subsequent dealings by the depositor with the funds deposited, except in his capacity as trustee. The point was neither related nor discussed in *Bath Savings Inst.* v. *Hathorn*, supra, but the opinion rather inferentially suggests it. In *Macy* v. *Williams*, 8 N. Y., Supp. 658, one Guion, a depositor in savings banks, declared deposits made by him to be in trust for his grandniece. He received pass-books showing the accounts to be with him as trustee for her. Subsequently he drew out all the money for his own benefit. In a suit against the executors of his will, for the recovery of the money so drawn out of the savings banks, the court said: "When the depositor, Guion, drew out the funds in question, he received the same as trustee of (the grandniece), to whom they belonged, and held them in that capacity." A widow, in a Connecticut case, *Minor* v. *Rogers*, 40 Conn., 512, deposited money in her own name as trustee for a boy who was accustomed to do errands for her; remarking to his parents that he would need it for his education. She later appropriated the money to her personal use. "It will be observed," reads a majority opinion, "that some three years after the gift was made (she) refused longer to act as his trustee, and thereupon converted the property to her own use. It may well be questioned whether the legal title to the chose in action did not instantly vest in the plaintiff by this wrongful act of hers . . . ." The Alabama case of *Sayre* v. *Weil*, 94 Ala., 466,

10 So., 546, reveals that the defendant, over a period of ten or fifteen years, deposited money in his name as trustee for grandchildren, the account so showing. Being indebted on a promissory note to the bankers holding the deposit, he directed them to apply the trust funds toward its payment, which they agreed to do. The court held such an agreement invalid against the cestui que trust. *Milholland* v. *Whalen*, supra, a Maryland decision, contains these words: "If the delivery of the money to a bank to be placed to the credit of a depositor for another, and the declaration of the trust as evidenced by the entry made pursuant to the settler's instructions, constitute and evidence a valid trust, then no act of the depositor in subsequently withdrawing the money can affect the rights of the cestui que trust, unless the power to withdraw be reserved." "Unless the power to withdraw be reserved;"—these words are of concentrated force. In another Maryland case, *Baker* v. *Baker*, supra, a husband deposited $2,000.00 in a savings bank to the credit of himself and wife. Subsequently the account was changed by adding the names of their children, with indicated shares to each, "payable at our death." The husband collected the interest while he lived, and after his death the widow kept the bank-book and received the interest on the deposit. It was held that a valid trust was created in favor of the husband and wife for life, and to the children after their death. *Ray* v. *Simmons*, 11 R. I., 266, was a bill in equity to establish a trust, filed against the administrator of the intestate estate of the depositor by the person named on a bank-book as donee. There was evidence of a declaration by the donor that he had money deposited in the bank to as large an amount as permissible in his own name, and that he also had a deposit in another person's name, the identity of whom was not made known, and also evidence of the withdrawal by the depositor of a dividend. The court said: "The trust, except in so far as it was increased by subsequent deposits, was, in our opinion, created before the declaration was made; and no such declaration made after the creation of the trust could have any legitimate effect on it. The same is true in regard to the withdrawal of the dividend." There were several deposits and withdrawals at different times of various sums, but in what connection the withdrawals were made is not shown, in *Connecticut River Savings Bank* v. *Estate of Albee*, 64 Vt., 571: "So far as is disclosed by legal evidence, he (the donor and trustee) never said nor did anything thereafter, inconsistent with

that transaction, viewed on the theory that such a trust was intended to be created by him. The fact that he deposited other money to this account, and, as trustee drew money from it, is perfectly consistent with his being trustee." In an illuminating note on *Cunningham* v. *Davenport* (147 N. Y., 43), 32 L. R. A. at page 375, this statement is made: "If after having created a perfect trust the depositor withdraws the funds and leaves nothing on deposit at the time of his death, it will be the duty of the executor to carry out the trust in favor of the beneficiary," citing *Witzel* v. *Chapin*, 3 Bradf., 386. Under the present rule in New York, a bank deposit of one's money in his own name as trustee for another does not, standing alone, during the lifetime of the depositor, constitute other than a tentative trust, revocable at will. The case goes to this length: "In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." Matter of Totten, 179 N. Y., 112. The rule of the Totten case does not appeal to us with favor..

Whether a trust exist or not is usually a question of fact to be established or disproved by evidentiary facts. Explicitly and unreservedly, as the headings of the bank-books at first view indicate, Miss Cazallis intended all to know that the funds were deposited in her name as trustee for others. In doing this, unfettered and untrammelled English presumably was used for what it meant. No evidence having been brought forward irreconcilable with such signified intention, it seems consonant with reason and rules of law to take for granted that the words expressed her deliberate intent as trustor, and that they should be given their full effect.

The defense has not furnished evidence of facts and circumstances to upset the case against it, and to show that the real motive of Celina Cazallis was to effectuate designs opposed to the postulate of an intention to devest herself of the beneficial ownership of the funds. No statement by her, and no act of hers, essentially weighing against the prima facie evidence, has been shown. The attending presumptions have not been counterbalanced or overcome. This fundamentally distinguishes the case from others. The record is silent as to what was done with the moneys drawn out of the bank, but the parties agree that Celina counted herself responsible for accidental injury sustained in girlhood by Nancy (from whose account the

withdrawals were made), and that she assisted her pecuniarily. Besides, had she so desired, the donor might have reserved all or part of the income from the deposits, during life. *Barker* v. *Frey*, supra; *Bank* v. *Merriam*, 88 Maine at page 151; *Savings Inst.* v. *Titcomb*, 96 Maine, 62; *Smith* v. *Savings Bank*, supra; *Gerrish* v. *Inst.*, supra.

On the agreed statement of facts, the purpose of Miss Cazallis, to retain in herself as trustee, the legal title to the equitable gifts, is plain. The trusts did not survive her. Nothing signifies that if she should die, or for any cause should become unable to act in the trusts, a new trustee should be appointed. Now that she is dead, the administrator of her estate, who has but naked legal title to the trust funds, should make payment to the beneficiaries, to each his due proportion.

By error, the plaintiffs have named themselves among the defendants in the bill. Amendment will correct this inconsistency. The general guardian of Mary Cazallis, although named and answering as a defendant, is not properly a party. Mary herself, as an heir at law of the intestate donor, might have been named as defendant, and, in the event of her incapacity, a guardian ad litem appointed. *Wakefield* v. *Marr*, 65 Maine, 341. Plaintiffs may amend by discontinuing as to the general guardian. The administrator represents the estate of the decedent. It is not essential that Mary be made a party; an action for money had and received would lie against the estate of Miss Cazallis at the instance of each donee. Gaffney's Estate, 146 Pa. St., 49.

When the indicated details shall have had attention, a justice below will enter a decree sustaining the bill, and further will

*Decree in accordance with this opinion.*

PHILBROOK, J. does not concur.