Richardson v. Stephenson, 193 Wis. 89.

RICHARDSON and others, Trustees, Plaintiffs, vs. STEPHENSON and others, Defendants.   [Two appeals.]

*April 8—May 3, 1927.*

*Trusts: Reservation of right of revocation: Strict compliance necessary: Amendment not joined in by one trustee: Sufficiency.*

1. Reservations by the settlors of trusts reserving to them the power to revoke or amend their trust instruments are lawful and effective in the absence of statutes expressly forbidding them; and generally this power of revocation must be strictly pursued, a mere substantial compliance with the trust instrument not being sufficient. p. 92.

2. Under a reservation in a trust deed reserving the right to amend or revoke the trust if the settlor's acting co-trustees joined with her in the execution of the amending instrument, the mere consent of an acting trustee not signing such instrument is insufficient, though he was beyond seas at the time. p. 93.

3. It is the duty of the court to give the trust instrument a proper interpretation, without regard to its effect on the parties or the settlor's reason for using any particular language in the trust. p. 93.

4. Persons may join in the execution of an instrument, although they do not execute it concurrently in time and place, if their wills unite in an expression of their intent at some time and place. p. 93.

5. An instrument signed and acknowledged by the settlor, amending the trust deed, speaks her will so long as she lives, in the absence of revocation before her death; but since it was not signed by one trustee until after the settlor's death it was a nullity, and the trust must be carried out by the trustees ac-

cording to the original instrument, the rights of the parties being fixed as of the time of the settlor's death.   pp. 94, 95.

6. The language of the trust deed, "I reserve the right at any time prior to my death to amend or revoke" the trust, provided that "all of my co-trustees then acting join with me in the execution of such instrument," is *held* to require that all the trustees join in the execution and acknowledgment of the amending instrument before the settlor's death.   p. 95.

ESCHWEILER, J., dissents.

.APPEALS from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge.   *Reversed.*

Declaration of trust.   This action is in the nature of a special proceeding instituted by the trustees under the trust for the purpose of determining the validity of a modifying instrument dated July 2, 1925, and for instructions relative to the management and disposal of the trust property.

The facts are undisputed.   On January 4, 1922, Martha E. Stephenson made, executed, and acknowledged a certain trust instrument wherein and whereby she conveyed certain property to herself, *Emmet L. Richardson,* and *Perry J. Stearns* as trustees for the period of her life, that of her son Grant·T. Stephenson, and twenty-one years thereafter.   In such trust instrument it was among other things provided as follows:

"I reserve the right at any time, prior to my death, to amend or to revoke the trust hereby created by instrument signed, sealed, witnessed, and acknowledged by me as deeds are required to be; provided, however, all of my co-trustees then acting join with me in the execution of such instrument."

Acting pursuant to the power reserved by said clause, on July 2, 1925, Martha E. Stephenson executed an instrument wherein and whereby she attempted to in part revoke and otherwise modify the trust instrument of January 4, 1922. This instrument was executed by Martha E. Stephenson and *Perry J. Stearns* as trustees of the said Martha ·E. Stephenson trust in the presence of witnesses and was signed, sealed,

and acknowledged as required by the terms of the original trust instrument on July 2, 1925. *Emmet L. Richardson,* the remaining trustee then acting, was in Europe. On July 11, 1925, and before the amending instrument could be presented to *Emmet L. Richardson,* Martha E. Stephenson died. *Mr. Richardson* returned to this country, and upon presentation to him on July 30, 1925, of the amending instrument executed by Martha E. Stephenson and *Perry J. Stearns,* he, as such trustee and in the presence of witnesses, affixed his signature thereto and duly acknowledged the same. Prior to his return to Milwaukee, which occurred on July 29 or 30, 1925, *Mr. Richardson* knew nothing of the desire of Mrs. Stephenson to amend the trust instrument of January 4, 1922, nor had he any knowledge, prior to the presentation to him, of the instrument purporting to amend such trust.

The trial court was of the view that the trust was properly amended, findings of fact were made in accordance with such view, and judgment was entered accordingly, from which the present trustees, plaintiffs here, and defendants *Albee* and *Jamison,* appeal.

For the appellant trustees there was a brief by *Upham, Black, Russell & Richardson,* attorneys, and *Clark M. Robertson,* of counsel, all of Milwaukee, and oral argument by *Mr. Robertson.*

For the defendant appellants *Annie A. Albee* and *Jennie A. Jamison* there was a brief by *Kaumheimer & Kaumheimer* of Milwaukee, and oral argument by *Leon E. Kaumheimer.*

*Frank M. Hoyt* of Milwaukee, guardian *ad litem,* for the infant defendants *Grant, Jr., Howard,* and *Irene Stephenson.*

ROSENBERRY, J. The persons appearing here as defendants might be more properly styled respondents. As is already stated, the proceeding is really in the nature of a special proceeding although it takes the form of an action. The

defendants are concerned as beneficiaries under the original trust instrument or under its terms as modified, or both.

The questions presented have been thoroughly and carefully briefed and argued and we can do little more than adopt the work of counsel and indicate the grounds upon which our conclusion rests.

It is well settled that reservations by the settlors of trusts reserving to them the power to revoke or to amend their trust instruments are lawful and effective in the absence of statutes expressly forbidding the same. *Warsco v. Oshkosh Sav. & T. Co.* 183 Wis. 156, 196 N. W. 829; *Dolan's Estate,* 279 Pa. St. 582, 124 Atl. 176.

In some states the subject is regulated by statute. *Estate of Willey,* 128 Cal. 1, 60 Pac. 475. While at common law the right of the settlor to amend the trust was somewhat more liberal, it is generally held that the power of revocation must be strictly pursued, and that a mere substantial compliance with the trust instrument is not sufficient. *Schreyer v. Schreyer,* 43 Misc. 520, 89 N. Y. Supp. 508; 26 Ruling Case Law, 1206; *Barlow v. Loomis,* 19 Fed. 677; *Downs v. Security Trust Co.* 175 Ky. 789, 194 S. W. 1041; *Lippincott v. Williams,* 63 N. J. Eq. 130, 51 Atl. 467.

The following cases, somewhat analogous to the case under consideration, are helpful but not controlling: Where it was agreed that three parties must join in a deed, it is held that there was no deed until the third joined, notwithstanding the fact that the third party who refused to join had no legal interest in the transaction. *Raydure v. Lindley,* 249 Fed. 675.

Under the law of Virginia a husband was required to execute and acknowledge his wife's deed separately and apart. The husband did not acknowledge his wife's deed until after her death, and it was held that a subsequent acknowledgment of the deed was inoperative. *Sewall v. Haymaker,* 127 U. S. 719, 8 Sup. Ct. 1348. See, also, *Richardson v. Woodstock Iron Co.* 90 Ala. 266, 8 South. 7, 9 L. R.

A. 348; *Cummings v. Busby,* 62 Miss. 195; *Martin v. Harrington,* 73 Vt. 193, 50 Atl. 1074.

It seems that a delivery of an instrument revoking a trust deed is not essential to its operation. *Barnard v. Gantz,* 140 N. Y. 249, 35 N. E. 430; *Cazallis v. Ingraham,* 119 Me. 240, 110 Atl. 359.

The language of the reservation is that the settlor reserves the right, prior to her death, to amend provided her co-trustees then acting join with her in the execution of the instrument. Under the terms of the reservation it cannot be and is not argued that the amending instrument was complete without the signature of *Mr. Richardson,* but it is argued that when executed by him he joined therein as of the time of its execution by his co-trustees, Mrs. Stephenson and *Mr. Stearns.* We are thus brought to a consideration of what is meant by the words "provided, however, all of my co-trustees then acting join with me in the execution of such instrument." It is conceded that *Mr. Richardson* was an acting trustee, and it cannot be held, nor is any authority cited to that effect, that the mere fact that he was beyond seas when the two trustees executed the amending instrument on July 2, 1925, made him any the less an acting trustee. Both the original instrument and the amending instrument were very carefully prepared, lawyerlike documents in which language is used with appropriateness and exactness. The language is plain and unequivocal. Had the settlor intended that a mere consent would be sufficient there can be no doubt that appropriate language to express that idea would have been used. *Gregg v. Owens,* 37 Minn. 61, 33 N. W. 216.

We know of no reason, and we need know none, as to why the settlor used the precise language that she did. It is our duty, without regard to its effect upon the parties, to give it a proper interpretation.

Persons may join in the execution of an instrument although they do not execute it concurrently in time and place if at some time and some place their wills unite in an ex-

pression of their intent. When Mrs. Stephenson affixed her signature to the amending instrument and acknowledged the same she thereby expressed her intent with relation thereto in the manner prescribed by the trust instrument. Her act so performed continued to speak her will and her intent with respect to the exercise of that right so long as it remained unrevoked. When thereafter and on the same day *Mr. Stearns* executed and acknowledged the instrument he thereby expressed an intent to join with Mrs. Stephenson in the amendment of the trust agreement in the manner and form prescribed by the terms of the reservation. His expression of intent by that act was joined to hers and from that time continued to speak as an expression of his will in the matter as did hers. There can, it seems to us, be no reasonable doubt that Mrs. Stephenson might at any time prior to her death on July 11, 1925, have revoked her act, and had she done so there could thereafter have been no joining by the third trustee. She did nothing,—therefore it continued to speak her will in the matter as long as she lived.

Speaking of a will, Mr. Justice Dodge said:

"A will is ambulatory during the life of its maker. It is, in effect, reiterated as his testament at each moment of his life after its execution, including the last moment, and is governed by the law existing at the time when it takes effect, upon the testator's death." *Will of Kopmeier,* 113 Wis. 233, 89 N. W. 134.

The same thing is true of the settlor's expressed wish to amend the trust instrument. The amending instrument declared her intention at every moment of time. It, however, could not take effect until the will of the other trustees, expressed in like form, joined or united with hers. Upon her death it ceased to speak longer and the rights of the parties became fixed and must be determined as of that time. The act of the three trustees joining in the execution and acknowledgment of the instrument could never be com-

pleted.   Death had silenced her will.   *Ritchie v. Rawlings,* 106 Kan. 118, 186 Pac. 1033.

If prior to her death the other acting trustee had joined in its execution and acknowledgment it would have been a completed thing, not subject to revocation or modification except perhaps by another instrument executed and acknowledged in the manner prescribed by the trust agreement.  Our conclusion is strengthened by the fact that if a different interpretation be placed upon the language, then on July 30th, when *Mr. Richardson* signed and acknowledged the instrument, it was within his sole power to give or withhold vitality to the trust agreement.   Had she lived to the moment when *Mr. Richardson* executed the amending instrument it would have continued to speak her will in the matter, and she would have had to that instant the power of revocation. . Death having intervened, there could be no such uniting or joining of the will of the settlor with that of her co-trustees.

There is a further consideration: the language of the reservation is, "I reserve the right at any time prior to my death to amend or revoke," etc. . To what do the words "prior to my death" refer?  Certainly they could refer to no act of Mrs. Stephenson because she could perform none after her death.   Therefore without the use of these words it is apparent that everything to be done by her must of necessity have been done prior to her death.   They must therefore have related to something to be done by her co-trustees prior to her death.   As there was nothing for the co-trustees to do but join with her in the execution and acknowledgment of the amending instrument the language cannot be applicable to anything else.   So that by the very language of the reservation the trustees were required to join in the execution and acknowledgment prior to her death.

In view of these considerations we have no hesitancy in reaching the conclusion that the amending instrument was not so executed as to give it vitality.   It is therefore a nullity

and the trust should be carried out in accordance with the terms of the original trust instrument.

*By the Court.*—Judgment appealed from is reversed, and cause remanded for further proceedings according to law.

ESCHWEILER, J. (*dissenting*).   The creator of the trust here involved executed, as far as it was possible for her to do, the power expressly reserved by her to change the terms of the trust.   She alone had the affirmative control of the making of such changes and her co-trustees had no more than a negative control.   She exercised completely her affirmative right, and it was consented to by both of the trustees and each immediately upon presentation to them respectively of the proposed change.

Manifestly the expression of an objection to such change proposed by her when expressed by either co-trustee would necessarily relate back to the time of her expressing her desire and would speak as of that time.   Plainly, it seems to me, likewise an approval, when expressed, relates back to the same time.   This clearly would be so were there any change to arise as to the beneficiaries, intermediate the first expression by the creator of the trust and its approval by the co-trustees.   That is to say, the rights of beneficiaries, or those claiming through or under them, arising from such change would be determined as of the time that the creator of the trust formally declared her wish to have such change, and not as of the time when the last of the co-trustees expressed his consent to the same, because it is her change, not theirs.

I think, therefore, the trial court was clearly right in holding that the subsequent approval by *Mr. Richardson* of the expressed desire of the creator of the trust should be deemed as taking effect as of the moment when she so expressed in writing her desire to make a change of that which was her own bounty.