BERNARD F. KELLEY, executor & trustee, *vs.* BENJAMIN F. SNOW & others.

Bristol.    October 26, 1903. — March 9, 1904.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Husband and Wife.   Gift.   Trust.   Power.   Savings Bank.   Will.*

A married woman may make a present conveyance of all her personal property to a trustee, retaining a beneficial interest during her life, with a gift over upon her death, subject to be varied by appointment during her lifetime upon giving notice in writing to the trustee, and such a conveyance is not invalid if made for the purpose of preventing the husband of the donor from sharing in the distribution of the property upon her death.

A trust created by a married woman by an instrument under seal, executed in duplicate, conveying the personal property of the donor to a trustee, the donor retaining a beneficial interest during her life, with a gift over upon her death,

is not terminated by the trustee, after keeping his duplicate original of the instrument for two years, returning it to the donor at her request.

If a married woman makes a present conveyance of personal property to a trustee, retaining a beneficial interest during her life, with a gift over upon her death, subject to be varied by appointment upon giving notice in writing to the trustee, and no mention is made of a power of appointment by will, the power can be exercised only during the lifetime of the donor, and an attempted revocation of the trust by will is void.

Whether a deposit of money in a savings bank, in which the depositor already has deposits, stated to be in trust for another person, creates a trust for the benefit of that person, depends on the intent of the depositor and is a question of fact.

The consent in writing by a husband to a will of his wife leaving him a certain sum of money does not operate as a consent to the will as modified by a subsequent codicil, which does not change the legacy to the husband but radically changes the rest of the will, and in such a case the husband can waive the provision of the will for his benefit and require his statutory share.

BILL IN EQUITY, filed December 31, 1902, by Bernard F. Kelley, executor under the will of Mary Ann Snow, late of New Bedford, and also trustee of certain funds and personal property assigned and transferred to him by Mary Ann Snow in her lifetime, for instructions.

The case came on to be heard before *Knowlton,* C. J., who, by agreement of the parties, reserved it for determination by the full court.

The will and first codicil of Mary Ann Snow were as follows:

"Know all men by these presents that I, Mary Ann Snow, of New Bedford, Bristol County, Massachusetts, being of sound and disposing mind and memory, do make, publish and declare this my last will and testament.

"First. I order my executor hereinafter named as soon as convenient after my decease to sell all my property, real, personal or mixed, and I hereby authorize and appoint my said executor to sell said property, both real and personal, either at private sale or public auction, and to make, execute and deliver all deeds, bills of sale or other instruments necessary to carry such sales into effect.

"Second. After the payment of all my debts, funeral expenses and the charges of administration, and the amount to which my husband, Benjamin F. Snow, would by law be entitled from the proceeds of said sale, I give and bequeath to Mary Ann Hammond, my niece, the sum of one thousand dollars.

"Third. All the rest, residue and remainder of my estate,

real, personal or mixed, I give, devise and bequeath to Thomas R. Hillman in trust, nevertheless, for the following trust purposes only, viz: to keep the same safely invested and to pay over the income therefrom to Gracie Kirwin for and during the term of her natural life. At her death I direct my said trustee to pay over said trust fund, together with all accumulations of interest to the issue of said Gracie Kirwin if she die leaving issue surviving her. If the said Gracie should die leaving no issue surviving her I direct my said trustee to pay over said trust property in equal shares to Mary Ann Hammond, Thomas Meade, son of my brother, John Meade, and Bernard Kelly.

"Fourth. I nominate and appoint Thomas R. Hillman as executor of this will and request that he be not required, either as executor or trustee under this will, to furnish surety or sureties on his official bond.

"In witness whereof I have hereunto set my hand this twenty-third day of June A. D. 1892.          Mary $\times$ Ann Snow."

her

mark

Here followed an attesting clause and the signatures of three witnesses.

"I, Mary Ann Snow make this codicil to my will above executed. I revoke and cancel in the second clause of my will the words, 'And the amount to which my husband, Benjamin F. Snow, would by law be entitled,' and I hereby give and bequeath to my said husband the sum of two thousand dollars, except as herein changed by this codicil I hereby ratify and confirm my said will.

"In witness whereof I hereto set my hand this twenty-third day of June A. D. 1892.          Mary $\times$ Ann Snow."

her

mark

Here followed another attesting clause and the signatures of the same three witnesses. Then came the following signed by the husband of the testatrix:

"I hereby consent to this codicil and the foregoing will as changed by this codicil.          Benj. F. Snow."

The second codicil was as follows:

"I, Mary Ann Snow, make this second codicil to my will dated June 23d, 1892.

"I revoke section four of my said will and substitute therefor the following section.

"I nominate and appoint Bernard Kelley of Rochester, New York, executor of the foregoing will and codicil.

"In witness whereof I hereto set my hand this first day of November, A. D. 1893.                    Mary ×̲ Ann Snow."
                                                            her
                                                            mark

Here followed an attesting clause and the signatures of three witnesses.

The third codicil was as follows:

"I, Mary Ann Snow, wife of Benjamin Snow of New Bedford, Bristol County, Massachusetts, make this codicil to my last will in manner following. My will and the codicil thereto are dated June twenty-third 1892, and my husband, Benjamin F. Snow, assented thereto and I hereby ratify and confirm said will and codicil except as herein changed.

"1. My friend Thomas R. Hillman has deceased and I appoint as executor of this will my nephew Bernard Kelly and I request that he be excused from furnishing sureties or a surety on his official bond. He shall have all the power given in said will to Hillman.

"2. The third clause in said will, wherein the rest, residue and remainder of my estate was given in trust to Thomas R. Hillman for the benefit of Gracie Kirwin I hereby cancel and revoke, also the bequests therein given at the end of said third clause to Mary Ann Hammond, Thomas Meade and Bernard Kelly and issue of Grace Kirwin.

"3. Whereas the said Bernard Kelly entered into a trust agreement dated September eleventh, 1893, wherein he agreed upon receipt of eleven savings bank deposits to make certain disposition of the same as in said agreement contained. I do now cancel said disposition and revoke the same and in place thereof substitute the following bequests:

"4. I direct my executor to deposit with the Treasurer of the City of New Bedford the sum of two hundred dollars the income from which shall be used in the care and preservation of my burial lot in Oak Grove Cemetery in New Bedford.

"5. I give and bequeath to Bernard Kelly, my nephew, three thousand dollars.

"6. I give and bequeath to my sister, Elizabeth Kelly, two thousand dollars.

"7. I give and bequeath to my niece, Mary Ann Hammond, the sum of two thousand dollars, one half of my silver, one feather bed, three mats and one set gold band china crockery.

"8. To the following named persons I give and bequeath the sum of one thousand dollars each; Thomas Meade, son of my brother John Meade; John Meade, son of the aforesaid Thomas Meade; Mary Meade, daughter of Thomas and grand-daughter of my brother John Meade; Mary C. Hammond, daughter of said Mary Ann Hammond; Elizabeth E. Hammond, daughter of said Mary Ann Hammond; Herbert Hammond, son of said Mary Ann Hammond; Edward Kelly, son of my sister Elizabeth; William Meade, son of my brother John Meade; William Meade, son of Thomas and grandson of my brother John.

"9. All the rest, residue and remainder of my estate, real, personal or mixed I give, devise and bequeath to the said Mary Ann Hammond.

"In witness whereof I hereto set my hand this twenty-eighth day of June, 1901.       Mary $\times$ Ann Snow."

Here followed an attesting clause and the signatures of three witnesses.

The indenture of trust and assignment were as follows:

" Know all men by these presents that I, Mary Ann Snow, of New Bedford, Bristol County, Massachusetts, for a valuable consideration, do hereby assign and transfer unto Bernard F. Kelley, of Rochester, New York State, all my personal property, consisting of my household furniture and furnishings and silver and clothing; and the following deposits in savings banks, viz:

Money on account No. 72,088 New Bedford Institute for Savings.
"    "    80,718    "    "    "
"    "    52,083    "    "    "
"    "    37,335    "    "    "
"    "    44,665    "    "    "
"    "    47,319    "    "    "
"    "    56,762    "    "    "
"    "    79,772    "    "    "
"    "    26,431    "    Five Cents Savings Bank.
"    "    39,962    "    "    "
"    "    14,261 Plymouth Savings Bank, Plymouth, Mass.

in trust, nevertheless, for the following trust purposes only and not otherwise, viz:

"First. Said Mary Ann Snow is to retain possession of the property hereby assigned, together with the bank pass books representing said savings bank deposits to collect the income during her life.

"Second. Said Mary Ann Snow shall have the power to change the following dispositions at any time upon written notice to said Kelley.

"Third. At the decease of said Mary Ann Snow, said Kelley shall then take possession of said property and bank books and shall distribute the same as follows, providing the following dispositions have not been changed.

"Fourth. To Mary Ann Hammond, wife of Herbert Hammond, one-half of my silver and one feather bed, three mats and one set gold band china crockery.

"Fifth. To Grace Kirwin, my son's natural child, the remainder of my silver and household furniture and clothing.

"Sixth. I direct my said trustee to deposit with the Treasurer of the City of New Bedford the sum of one hundred dollars, the income from which shall be used in the care and improvement of my burial lot in Oak Grove Cemetery, New Bedford, Mass.

"Seventh. To Norah Meade three hundred dollars.

"Eighth. To Bernard F. Kelley three thousand dollars.

"Ninth. My said trustee shall hold in trust the sum of two thousand dollars, and shall pay the income thereof to said Mary Ann Hammond during her natural life. If her husband shall die during her life said trustee shall thereupon pay to her the whole of said trust fund. At her decease if said fund shall not have been paid to her as aforesaid it shall then be paid to her issue surviving her.

"Tenth. My said trustee shall hold in trust the sum of five hundred dollars, and shall pay the income thereof to my brother James Mead during his life. At his decease said fund shall be paid over to George Mead, son of said James Mead.

"Eleventh. My said trustee shall pay to my sister Elizabeth Kelley the sum of one thousand dollars.

"Twelfth. My trustee shall hold in trust the sum of one thousand dollars, the income thereof to be paid to Thomas Mead, son of my brother John Mead, during his life. At his

death said fund shall be paid to John Mead, son of said Thomas. If said John Mead die before his father, leaving issue surviving him, said fund shall be paid to such issue. If he leave no issue surviving him, it shall be paid to his brothers and sisters who may be living at his father's death.

" Thirteenth. All the rest, residue and remainder of said property, my said trustee shall hold in trust and shall pay the income therefrom to said Grace Kirwin during her life; if it shall be considered expedient by my trustee he may pay to said Grace Kirwin such sums from the principal as he deems best. At her decease said fund or so much as remains shall be paid to the issue of said Grace if she die leaving issue surviving her. If no issue survive her said fund shall be paid to the issue of Elizabeth Kelley by right of representation as such issue may be determined at the death of said Grace Kirwin.

" Fourteenth. If said Mary Ann Hammond mentioned in section fourth, or George Mead, son of James Mead, or either of them die leaving no surviving issue, said trustee shall dispose of the fund herein given for the benefit of such person in accordance with the provisions of section thirteenth hereof.

" Fifteenth. The said Bernard F. Kelley hereby assents to the terms of the foregoing instrument and agrees to carry out all the trusts therein stipulated.

" In witness whereof we hereto set our hands and seals this eleventh day of September, 1893.    Mary × Ann Snow. [L. S.] Bernard F. Kelly. [L. S.]    Witnessed by Henry B. Worth."

" New Bedford, Sept. 11, 1893. Then personally appeared . the said Mary Ann Snow and Bernard F. Kelley and acknowledged the foregoing instrument by them signed to be their free act and deed. Before me, Henry B. Worth, Notary Public." [Notarial Seal.]

" To the Treasurer of the Plymouth Savings Bank, Plymouth, Mass. New Bedford, Mass., Sept. 8th, 1893. For value received, I hereby assign and transfer . to Bernard F. Kelley and his legal representatives, all the moneys that have been deposited, together with interest that has become due on account of Book No. 14,261 in the Plymouth Savings Bank.    Mary × Ann Snow. Witness to signature, Henry B. Worth."

The finding of the master as to the savings bank deposit claimed by the defendant Elizabeth Kelley was as follows:

"11. One of the savings bank deposits included in the property which the trust instrument purports to assign and transfer to the petitioner is a deposit amounting to sixteen hundred dollars, represented by book No. 56,762 in the New Bedford Institution for Savings, standing in the name of the testatrix in trust for the respondent, Elizabeth Kelley, a sister of the testatrix. Elizabeth Kelley claims the deposit. The facts in the matter are these. The account was opened by the testatrix in trust, as above stated, in 1874. It does not appear that Elizabeth Kelley knew of its existence until 1885, when, at the request of the testatrix, she executed and delivered a written transfer of it to the testatrix. In 1889, the balance of the deposit, namely, $1,600, was carried to a new book, but under the same number and the same account, and at the time when this was done, the testatrix signed and delivered to the bank the following declaration: ' Having deposited money in the New Bedford Institution for Savings as trustee, as represented by book No. 56,762, I hereby declare that no written trust exists, and that by the terms of said trust said deposit with its dividends is payable to me or my order during my life, and after my death to my estate.' No additional deposits were made on the account subsequent to this time, and the dividends as they accrued were drawn by the testatrix. In 1889 and prior thereto the testatrix had a number of deposits of more than one thousand dollars each in the bank stated, standing, one in her own name, and the others in her name ostensibly in trust for various persons, but in reality for her own use. On several occasions subsequent to 1889, the testatrix told Elizabeth Kelley that she had put money in the bank for her, but she did not state how much or the name of the bank. On one of these occasions, she said to Mrs. Kelley: ' If you will sell your house and come to live with me, I will help you more.' Mrs. Kelley, however, did not sell her house and did not go to live with the testatrix. At different times subsequent to 1889, the testatrix told the daughter and son-in-law of Mrs. Kelley that she had put money in the bank for the latter, but she did not state how much or designate the bank. The book was never delivered by the testatrix to Elizabeth

Kelley or to any one for her, but was always kept by the former in her possession, until the day before she died, when she handed it, with the transfer to the petitioner signed by her when she executed the trust instrument, to Mary Ann Hammond to deliver to the petitioner upon her death. The trust instrument provides for the payment of one thousand dollars to Mrs. Kelley, and the third codicil contains a bequest of two thousand dollars to her. It does not appear that there was any deposit in the name of the testatrix in trust for Elizabeth Kelley, other than this deposit. On the foregoing facts I find that it was not the intention of the testatrix at any time that Elizabeth Kelley should be the owner of the deposit in question, and I find that there was no completed transfer or gift of it to her by the testatrix."

The finding of the master as to the savings bank deposit claimed by the defendant Mary Ann Hammond was as follows:

"12. In 1897, about four years after the execution of the trust instrument, the testatrix made a deposit of sixty-four dollars, on book No. 69,645, in the New Bedford Five Cents Savings Bank, in her name, in trust for Mary Hammond, meaning thereby her niece, the respondent, Mrs. Mary Ann Hammond. At this time the testatrix had two other accounts in the same bank, each in excess of one thousand dollars, one in her own name, the other in her name, ostensibly in trust for one Whitney, but in reality for her sole benefit. She continued to make deposits on the account in question until her death, the deposit then amounting to $1,050.52. Mary Ann Hammond claims this deposit. The facts in the matter other than those above stated, are these. The testatrix, about a year before her death, said to Mrs. Hammond's husband, ' I am putting money in the bank in your wife's name for her.' On one occasion, after the account had been opened, the testatrix and Mrs. Hammond's husband being together in front of said bank, the former handed to the latter the book representing the deposit in question, together with a sum of money, and said to him, ' You take that in and deposit it; I am taking out a book for your wife.' The testatrix, about two weeks before her death, exhibited to Mrs. Hammond the book representing the deposit in question, and said to her, ' There is a book, I put money in for you.' The testatrix always kept the

book representing the deposit in question in her possession until the day before she died, when she handed to Mrs. Hammond a bag containing said book and other bank books, and instructed her to deliver the bag with its contents to the petitioner, in the event of her death. A few days after the death of the testatrix, Mrs. Hammond delivered to the petitioner the bag with all the books in it, including the book representing the deposit in question. It does not appear that there was any deposit in the name of the testatrix in trust for Mrs. Hammond, other than the deposit in question. The will provides for the payment of one thousand dollars to Mrs. Hammond, the trust instrument provides for the payment of the income of two thousand dollars to her during her life, and in a certain contingency for the payment of the principal sum to her, and the third codicil gives her two thousand dollars and the rest and residue of the estate of the testatrix, after the payment of debts and legacies. On the foregoing facts, I find that it was not the intention of the testatrix at any time that Mrs. Hammond should own the deposit in question, and I find that there was not a completed transfer or gift of it to her by the testatrix."

*H. B. Worth,* for the executor and trustee.

*L. T. Willcox,* (*W. C. Parker* with him,) for Benjamin F. Snow.

*O. Prescott, Jr.,* (*F. A. Milliken* with him,) for Elizabeth Kelley and others.

*M. H. Browne,* (*J. M. Browne* with him,) for Grace Kirwin and Norah Mead.

*G. Calkins,* for Bernard F. Kelley, Edward Kelly and George Meade.

*F. A. Milliken,* for Mary Ann Hammond.

HAMMOND, J. 1. The trust deed recites that it is executed "for a valuable consideration," contains words apt to convey the property, is under seal, which imports a consideration, and was delivered to Kelley, the transferee, who received the same and agreed " to carry out all the trusts therein stipulated." As between the parties, therefore, the legal title to the property passed to Kelley even without delivery; and, so far as respected the form of the transaction, the trust was completely created. Upon its face the trust was valid notwithstanding the provisions that

the donor during her life should have the use of the property and collect the income of the bank deposits, and the further provision that she should have the power to change the " dispositions at any time upon written notice to " Kelley.  *Stone* v. *Hackett*, 12 Gray, 227, 232.

It is urged however by the husband of the donor that the trust was invalid because it was in the nature of a testamentary instrument, and moreover was in fraud of his rights.  It appears from the report of the master that the wife had determined to change the disposition of her property provided for by her will and codicil of June 23, 1892, but her husband refused to consent to the changes she desired to make.  Whereupon, " by advice of counsel, and with the view to make the desired changes in a manner which would be effective without her husband's consent, she executed " this trust deed in duplicate, giving one copy to Kelley and retaining the other.  There can be no doubt of her intention.  She intended to put this property beyond the control of her husband, even if in doing that it was necessary to limit her own control, or change her relation towards it.  She was determined that he should have no power to say where it should go, either during her lifetime or after her death, and in the light of the facts disclosed in the report it is not difficult to see the grim determination with which she went to work.  She transferred the legal title to Kelley, reserving to herself certain beneficial rights.  The legal title passed at once, and all beneficial interest ceased at her death.  It was a present conveyance which took effect in her lifetime.  She fixed then the terms of the trust.  It is true that she had the power to change its terms, but the power was conditioned upon giving written notice to Kelley.  This condition, especially when taken in connection with the entire absence of any express power by will, shows that the power was to be exercised and the changes were to take effect in her lifetime and not by way of a will.  In view of the purpose of the donor, the circumstances surrounding the transaction, the language of the instrument, the nature of the power given to her, it is clear that the instrument was not testamentary in its nature, but was a present conveyance of property taking effect during the lifetime of the donor, and that it was made in good faith for that

purpose. Nor is the trust invalid as against the husband. Under our statutes the right of a married woman over her personal estate during her lifetime is absolute so far as respects her husband. She may convey it or give it away upon such terms as she pleases, provided always the conveyance be real and not colorable and is made to take effect in her lifetime. *Leonard* v. *Leonard*, 181 Mass. 458. The case is distinguishable from *Brownell* v. *Briggs*, 173 Mass. 529. The trust therefore was a valid trust at the time of its creation.

It existed at the time of the donor's death. While it is true that Kelley after keeping his duplicate original of the instrument for two years returned it to the donor at her request, the master finds that her purpose in requesting its return does not appear, and it is evident that as late as June 28, 1901, several years after the return, she regarded the trust as still existing, for in her will executed by her on that day she attempts to cancel and discharge the trust agreement. But the return of the agreement without more would not change the legal title which was in Kelley nor the rights of the beneficiaries. The attempted revocation of the trust was void because made by will and no notice was given to Kelley during the life of the donor. The trust, therefore, at the time of the death of the donor, existed as it was originally created. By her death her beneficial life estate was determined, and the beneficiaries in remainder became entitled to their respective shares in accordance with the terms of the trust deed. It follows that the property covered by the trust must be so administered by the plaintiff.

2. It is contended however by Elizabeth Kelley, one of the defendants, that one of the bank books named in the trust deed, namely, Book No. 56,762, of the New Bedford Institution for Savings, was held by the donor in trust for her, and that she is therefore entitled to it. The facts bearing upon this matter are stated at length in the eleventh paragraph of the master's report. Whether they show a special trust in favor of Mrs. Kelley is a question of fact and not of law. The facts fully warrant the conclusion reached by the master that the testatrix did not at any time intend to create a trust in favor of Mrs. Kelley in this deposit, and that there was no completed transfer or gift to her. This deposit must stand as a part of the trust.

3. A similar claim is made by the defendant Mary Ann Hammond to the bank book No. 69,645, in the New Bedford Five Cents Savings Bank. This deposit was not included in the trust deed, but was a part of the estate owned by the testator at the time of her death. The facts with reference to this claim are set out in the twelfth paragraph of the report of the master, and they fully justify his finding that it was not at any time the intention of the testatrix that Mrs. Hammond should own the deposit. No trust therefore is shown in it, and it is a part of the assets of the estate of the deceased.

4. At the decease of the testatrix her estate consisted of this last deposit and of real estate of the value of $5,000; and the question on this branch of the case is what disposition shall be made of this property, real and personal. The testatrix appears to have made a will and three codicils. At the time each was made she was the wife of Snow the defendant, who was her third husband. She was childless, her only child, a son by a former marriage, having died unmarried, leaving, however, a natural daughter, Grace Kirwin, who lived with the testatrix until a short time before her death. The first will and codicil, executed simultaneously in June, 1892, provided in substance that all the property real and personal should be reduced to cash by the executor, that $2,000 should be paid to the husband, $1,000 to Mary Ann Hammond, and the balance should be placed in trust for Grace Kirwin for life, with remainder to her children surviving her, or in default of such children, to the said Mary A. Hammond, Thomas Meade and Bernard F. Kelley. To this will and codicil the husband duly consented. At this time the estate consisted of the real estate above named and of the personal property afterwards conveyed by the trust deed, and it is evident that had the testatrix retained this property until her death her husband, if then surviving, would in the absence of the consent to her will have received much more than $2,000. The second codicil simply changed the trustee and executor nominated in the will. The third was executed the day before the testatrix died, and by it the provisions of the will and first codicil, with the exception of the bequests of $2,000 to the husband and of $1,000 to Mary Ann Hammond, are radically changed. The trust created in the will as above stated is re-

voked, there is no bequest to Grace Kirwin, and the estate remaining after the said bequests to the husband and to Hammond is divided among various legatees, the most of whom are not named at all in the first will. In a word, the will as changed by the third codicil is, with the exceptions above named, an entirely different will from that to which the husband consented, and this radical difference extends to the portion which if the testatrix had died intestate would have gone to him.

What is the result as to the rights of the husband? Shall his consent to the will and first codicil be held to be a consent to the will as changed by the third codicil?

At common law a married woman could not make a valid will of her real estate. Nor could she make a will of her personal estate (except perhaps as to that held by her to her own separate use) without her husband's license. 2 Bl. Com. 498. *Osgood* v. *Breed*, 12 Mass. 525. In order thus to establish a will, however, a general consent that the wife may make a will was not sufficient. It was necessary that the husband should consent to the particular will made by the wife. 2 Bl. Com. 498. *Rex* v. *Bettesworth*, Strange, 891. *Cutter* v. *Butler*, 25 N. H. 343, 357.

While under our statutes the real and personal estate of a married woman are her separate property, yet until very recently her power to dispose of it by will always has been subject to the condition that no will should operate to deprive the husband without his consent of certain rights therein at her decease. The testatrix died June 29, 1901. At that time Pub. Sts. c. 147, § 6, with its amendments, had not been repealed. It is true that in St. 1899, c. 479, § 13, there was a provision for its repeal, but this last statute having itself been repealed before it went into effect, (see St. 1900, c. 174, and c. 450,) never became operative, and it was not until St. 1900, c. 450, which took effect January 1, 1902, (see St. 1901, c. 461,) that Pub. Sts. c. 147, § 6 as amended ceased to be the law. This statute, as amended and in force at the time of the death of the testatrix, provided, so far as material to this case, that a married woman might make a will in the same manner and with the same effect as if she were sole, except that no such will should without the written consent of her husband operate to deprive him of her real estate

not exceeding $5,000 in value, where no issue survived her, or in any event, of more than one half of her personal estate. Pub. Sts. c. 147, § 6. St. 1885, c. 255, § 1. St. 1887, c. 290, § 2. The consent of the husband is not necessary to the validity of the will so far as it does not interfere with his rights in the estate of the testatrix, should he survive her. This consent is not in the nature of a transfer or conveyance of property in which the husband has any present right or interest, but it is only a waiver of any statutory right he might otherwise have to his wife's property after her decease. *Silsby* v. *Bullock*, 10 Allen, 94, 96. It is manifest that the reason which leads a husband to consent to a particular will may be found not only in the specific provisions therein made for him, but also in those which respect the other parts of the wife's property, especially that part which but for the will would upon her decease come to him. He might be willing to stand aside in the interest of his own child, and unwilling to do it in the interest of a person deemed by him undeserving, or for an object which did not commend itself to him. In the light of the principle prevailing, as before stated, at common law, namely, that the general consent of the husband that the wife might make a will was not sufficient, but that the consent must be to the particular will made, and of the principles applicable generally to a waiver, and of the weighty and obvious objections to a contrary interpretation, we are of opinion that the consent required by the statute is like that theretofore required at common law, and that a consent to one will is not applicable at least to a subsequent will which changes substantially the disposition of the property as to which the consent is requisite. It follows that the husband in this case never consented to the will of his wife as finally allowed. He is entitled to her real estate to the value of $5,000, and to one half of her personal estate as if she had died sole. But of course he cannot have also the specific legacy of $2,000.

Under this rule the husband in this case will apparently take substantially all the real estate, and there will be only a little, if any, real estate, and but a small amount of personal property, remaining.

It remains to be considered how this residue shall be distributed. It is plain that the testatrix did not intend by the third

codicil to revoke the legacies contained in the second item of the original will.   The bequest therefore of $1,000 to Mary Ann Hammond must stand as originally drawn.   It is also plain that the bequests contained in the fourth to the eighth clauses, both inclusive, of the third codicil were intended to relate only to the distribution of the trust fund and were to be paid only from it. This part of the will becomes inoperative.   The language of the residuary clause in favor of Mary Ann Hammond, however, is broad enough to cover whatever may be left of the estate outside of the trust fund.

The result is that the plaintiff holds the property named in the trust deed, including the deposit represented in book No. 56,762 in the New Bedford Institution for Savings, as trustee under the deed and not as executor, and he is to distribute it in accordance with its terms.   He holds the deposit represented by book No. 69,645 in the New Bedford Five Cents Savings Bank as executor, as a part of the assets of the estate of the testatrix free from any trust.   The rights of the husband in the estate are as hereinbefore stated; and the residue of the estate goes to Mary Ann Hammond.

*Decree accordingly.*