# Friedrich Estate

*Wesley H. Caldwell* and *Roper & Caldwell,* for accountant.

*Richard E. Prevail,* and *Adams & Childs,* for remaindermen.

*Herman Moskowitz,* guardian and trustee ad litem, p. p.

*Louis Marion,* for Commonwealth.

KLEIN, P. J., January 11, 1962.—By deed dated May 24, 1944, Elizabeth Friedrich granted and assigned to National Bank of Germantown and Trust Company, now Girard Trust Corn Exchange Bank, assets described in schedule "A", annexed thereto, in trust to pay the net income and such sums out of principal as might, in the opinion of the trustee, be necessary for her comfort, maintenance and support, to the settlor, for life, and after her death to apply the principal to the payment of Federal and State inheritance, transfer or succession taxes, which might be chargeable on settlor's entire estate, and after such payment, to pay the net income to settlor's five sons, Albert J. Westerman, George W. Westerman, Walter Westerman, William E. Westerman and H. Elmer Westerman, share and share alike until each should attain the age of 40 years, when she directed her trustee to distribute to each such son the share of principal from which he had been receiving the income, with gifts over in remainder of both principal and income to the respective issue of such sons, which it does not appear necessary to recite in this adjudication. By paragraph sixth of the deed, settlor provided as follows: *"Right to Revoke and Amend:* Settlor reserves to herself the right at any time by an instrument in writing lodged with Trustee, to revoke or amend this Deed of Trust in whole or in part."

By writing dated November 23, 1949, settlor, in exercise of the right reserved to herself by paragraph

sixth of the deed to revoke and amend same, revoked the disposition of the remainder interests after her death and, in lieu thereof, directed that two of her sons, Albert J. Westerman and George W. Westerman, should receive the principal of their shares upon attaining the age of 40 years, but that the shares of the other three sons, Walter Westerman, William E. Westerman and H. Elmer Westerman, should continue in trust for them for their respective lives, the principal to be distributed to their respective issue, per stirpes, at their respective deaths.

By a further writing dated April 21, 1953, settlor again amended the trust in respect to the retention of certain securities forming part of the trust, the details of which need not be recited in this adjudication.

In both of these amendments (hereinafter referred to as first amendment and second amendment, respectively) settlor in identical language provided as follows:

"The Settlor reserves to herself the right to revoke or amend the provisions herein contained with like force and effect as if said provisions had originally been incorporated in said Deed."

By a further instrument in writing dated April 7, 1961, (hereinafter referred to as third amendment), which it is agreed by all parties in interest was executed by settlor and delivered to her attorney, Edward J. Hardiman, for delivery to the trustee, on Friday April 7, 1961, but not delivered by Mr. Hardiman to the trustee until April 12, 1961, after the death of the settlor, in pursuance of the power of revocation reserved to her in the deed and previous two amendments thereto, settlor directed that after the application of the principal of the trust to the payment of taxes on her individual estate, the undistributed balance of principal and income should be distributed in

equal shares to the five children named in the deed, "free of trusts," with gifts over in remainder in the event any of said children should be deceased when the trust terminates, which it does not appear necessary to recite in this adjudication. . . .

The occasion of the filing of the present account was the death on April 9, 1961, of Elizabeth Friedrich, settlor, and the resulting termination of the trust.

All five of testatrix' children are living and apparently of age, and by decree of this court dated October 30, 1961, Herman Moskowitz, Esq., was appointed guardian ad litem for the issue of the settlor who are minors and trustee ad litem for those persons unknown and unborn who might be entitled under the original deed of trust to take the principal in remainder.

As recited above, in the original deed of trust, settlor reserved to herself "the right at any time by an instrument in writing lodged with Trustee, to revoke or amend this Deed of Trust in whole or in part." The so-called third amendment, referred to above, was executed by settlor on April 7, 1961, and on that date delivered to her attorney, Edward J. Hardiman, to be delivered to the trustee. Settlor died, as recited above, on April 9, 1961, and settlor's attorney delivered the amendment in question to the trustee on April 12, 1961. The statement of proposed distribution requests the auditing judge to determine whether the fact that the third amendment was not lodged with the trustee until after settlor's death invalidates it under the language of the deed, reserving to the settlor the right to revoke or amend it at any time "by an instrument in writing lodged with Trustee."

Mr. Prevail, on behalf of the settlor's sons, contends that the third amendment is legally effective because: (a) The language of the deed does not require that the amendment be lodged with the trustee in settlor's life-

time; and (b), even if this were necessary, delivery to Mr. Hardiman for transmittal to the trustee complied with such requirement.

Mr. Moskowitz, the guardian and trustee ad litem for minor and unborn issue of settlor, challenges Mr. Prevail on both counts. He insists that lodging the third amendment with the trustee, itself, in the lifetime of the settlor, was an essential prerequisite to its validity.

Let us study these two questions separately.

Our initial problem is to ascertain whether the clause found in the first two amendments, specifically reserving the settlor's right to revoke or amend the deed, but not repeating the requirement that any future amendments be lodged with the trustee by the settlor in her lifetime to be effective, eliminated this requirement. We think not.

Each of the three amendments to the deed of trust contained the following provision:

"The Settlor ratifies and confirms in all other respects the provisions herein contained with like force and effect as if said provisions had originally been incorporated in said Deed."

This language clearly included the sixth paragraph which provided that settlor could revoke or amend the deed in part or in whole "by an instrument in writing lodged with Trustee."

Moreover, in the preface to each of the three amendments the settlor first referred to the sixth paragraph of the original deed and repeated its provisions, including the requirement that the right to revoke or amend be "by an instrument in writing lodged with Trustee." If the settlor had intended that the clause contained in each of the first two amendments, continuing her right to revoke or amend, was in substitution for the sixth

paragraph of the deed, it is most unlikely that she would have repeated its provisions in detail in the second and third amendments. On the contrary, logically she would have referred, instead, to the new provision in the previous amendment, in the prefatory paragraph of the new amendment.

Furthermore, in each amendment, after setting forth the provisions of the sixth paragraph, she prefaced each change, whether of revocation or amendment, by saying either:

"Now, THEREFORE, the said Settlor, in pursuance of the power reserved to her as aforesaid, does hereby cancel, revoke and make void etc."

or

"AND the said Settlor does further, in pursuance of the power reserved to her as aforesaid, add to . . . the following:"

We, therefore, conclude that settlor's reservation in each of the amendments of the right to further revoke or amend the provisions of the trust also included the original direction that the amendatory writing be lodged with the trustee.

Having reached this conclusion, we must ascertain whether the third amendment was lodged with the trustee as required by the provisions of the sixth paragraph.

In approaching this problem, we must not lose sight of the very important and basic fact that the settlor was attempting, by the instrument which is now being challenged, to equalize the distribution of the trust estate among her five sons.

Under the provisions of the original trust instrument, settlor reserved the income to herself for her life, and upon her death, the income and principal became payable equally to the five sons. In all respects, each of settlor's five sons, received equal benefits.

The first amendment, dated November 23, 1949, changed this plan of distribution with respect to three of the sons, Walter, William and Elmer, by continuing the trust for their entire lives and eliminating the direction that their shares of the principal be distributed to them when they reach 40. The provision that Albert and George should receive their share of the principal at 40 remained unchanged. The effect of this amendment was to change the plan of equal distribution for each of the five sons to an unequal one favoring two of the sons.

The settlor, in the last amendment, attempted to cure this inequality by providing for an equal division of the trust estate among her five sons, if they should survive her.

There is a strong presumption that, in distributing an estate among children, settlor intends equality: Laughlin Estate, 354 Pa. 43 (1946); Schick Estate, 169 Pa. Superior Ct. 226 (1951). In construing the language of a deed of trust which is lacking in clarity, any permissible interpretation is to be preferred which will preserve the equality of benefits among the settlor's children who are named as beneficiaries. A construction which works an invidious distinction between the heirs is to be avoided where possible: Hirsh's Trust Estate, 334 Pa. 172 (1939). And the expression of an intent of inequality requires plain and unequivocal language to establish it: Laughlin Estate, supra, p. 50; Conner's Estate (No. 2), 318 Pa. 150 (1935); Lochrie's Estate, 340 Pa. 145 (1940); Hogue's Estate, 135 Pa. Superior Ct. 543 (1939).

In the instant case, if we hold that the third amendment is effective, complete equality among all of settlor's children results; if, on the contrary, we hold that it is invalid, an unequal distribution will follow.

We must also bear in mind the fact that the entire

trust res consists of settlor's own money, voluntarily placed in trust by her. Consequently, we must approach this problem in a benign spirit, making every effort to give effect to her obvious intentions. All doubts are to be resolved in favor of the donor whose property has become the subject of the trust. In Schautz Trust, 395 Pa. 605 (1959), Mr. Justice Musmanno said, at page 612:

"Fairness dictates that a person who sets up a trust without consideration should not in the end be regarded as a stranger in the realm of his own benevolence. Words used by him in the creation of the trust are not to become weapons against him unless no other interpretation is possible." See Goodell's Estate, 53 D. & C. 13, 21 (1945).

In spite of the law's concern for the settlor and her desires, however, it is also well settled that where a settlor reserves a power to amend or revoke the trust instrument in a given manner or under designated conditions, it must be executed in accordance with the stipulated terms, and cannot be effected in any other manner: Damiani v. Lobasco, 367 Pa. 1 (1951); Shapley Trust, 353 Pa. 499 (1946); Reese's Estate, 317 Pa. 473 (1935); Restatement of Trusts, 2d §330 j; Bogert on Trusts and Trustees, sec. 996; Scott on Trusts 2d §330.8.

Mr. Moskowitz, in his excellent report, relies, in a large measure, upon the following statement by the late Justice Allen M. Stearne in Shapley Trust, supra, at page 503:

"The right to revoke was limited to a 'proper instrument or instruments in writing executed by me and lodged with the Trustee'. The clause clearly indicates that the revoking writing referred to meant not only be executed by the settlor but meant also be lodged by *her* with the trustees."

From this language, he contends that, in the present case, the amendment had to be lodged with the trustee during settlor's lifetime. We cannot accept this contention. The factual situation in the Shapley case was entirely different from that which exists in the present case. In Shapley, the settlor did not at any time execute an instrument in writing revoking the deed. She made a different disposition of her estate by her will, which made no reference to the deed of trust. A certified copy of settlor's probated will was lodged with the trustee by the executor after her death. The Supreme Court properly ruled that the method of revocation provided in the deed must be strictly followed and that the lodging of a certified copy of the will did not revoke the trust. The case is, therefore, readily distinguishable from, and does not rule, this case.

In the present case, the settlor in the sixth paragraph reserved to herself the right to revoke or amend the deed of trust in whole or in part *"at any time* by an instrument in writing lodged with Trustee". (Italics supplied) If we were to hold that the writing had to be lodged with the Trustee by the settlor in her lifetime, we would be giving this language a narrow and literal interpretation. We are compelled, under the circumstances of this case, to adopt a more liberal construction and rule that the writing could be lodged with the trustee by settlor in her lifetime or by her agent after her death.

We, therefore, conclude that the delivery of the third amendment to the trustee by Mr. Hardiman, three days after settlor's death, met the requirements of the sixth paragraph and was effective to change the provisions of the deed. This conclusion not only results in completely equal distribution among settlor's five sons, but also gives full effect to her clearly expressed intentions, as set forth in the third Amendment made several days before her death.

Moreover, there is another compelling reason to support our finding that the third amendment was properly lodged with the trustee in accordance with the requirements of the sixth paragraph of the deed. Although the rule is that the method of amendment or revocation provided by the deed must be strictly followed, it has been relaxed where the courts have concluded that the provision was inserted for the protection of the trustee and then waived by it. For example, in Feder's Trust, 60 York 121 (1946), the deed provided that it could be modified, altered or revoked, in whole or in part, "by instrument in writing, executed and acknowledged by me and delivered to the trustee." An amendment was delivered and accepted by the trustee, signed by the settlor, but not formally acknowledged before an officer qualified to take acknowledgments. Objection was made to the amendment because of this. President Judge Gross, in a scholarly opinion, held that the requirement of an acknowledgment of the amendment, whether formal or otherwise, was for the benefit of the trustee, in order to assure the genuineness of settlor's signature, and could be waived by it. In like vein, in Miller v. Exchange Nat. Bank, 183 Okla. 114, 80 P. 2d. 209, (1938), the court held that a provision that the trust could be revoked by giving 30 days written notice was for the benefit of the trustee, and, if waived, the grantor could revoke the trust without complying with this formality.

In the present case, it is evident that the third amendment was an instrument in writing in conformity with the requirements of the sixth paragraph of the deed. The sole question in dispute arises from the fact that the settlor gave the writing to her attorney, who did not deliver it to the trustee until three days after she died.

Although this precise problem apparently has never been before our courts, authorities on the general subject, which have been furnished by Mr. Prevail, indicate that, if the settlor had mailed the third amendment to the trustee, instead of handing it to her attorney for delivery, this method of transmittal would have satisfied the requirement that the amendment be lodged wih the trustee: Hackley Union Nat. Bank v. Farmer, 252 Mich. 674, 234 N. W. 135, (1931); Restatement of Trusts 2d §330 i.

Under the circumstances of this case, we see little practical difference between mailing an amendatory writing and giving it to settlor's attorney for delivery to the trustee. In both situations, it is evident that settlor intended to change the provisions of the trust. We, therefore, rule that, in the present case, the direction to lodge the writing with the trustee was for the protection of the trustee. The trustee having accepted the third amendment and waived any right which it might have to object to its being lodged after settlor's death, the instrument is effective as an amendment to the deed of trust and binding on all of the beneficiaries, and the awards herein contained will be made in accordance therewith . . .